**George LEE and Catherine C. Lee Plaintiffs**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Ada Lauderdale Defendants**

**No. CIV.A. 3:03–CV–551BN.**

United States District Court, S.D. Mississippi, Jackson Division.

March 18, 2005.

---

David M. Sessums, Varner, Parker & Sessums, R.E. Parker, Jr., Varner, Parker & Sessums, Vicksburg, MS, for George Lee, Catherine C. Lee, Plaintiffs.

Philip W. Gaines, Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for

State Farm Mutual Automobile Insurance Company, Ada Lauderdale, Defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court are two Motions. First is Defendants' Motion to Reconsider the October 23, 2003, Opinion and Order of the Court which granted Plaintiffs' Motion to Remand, filed November 6, 2003.[1] Second is Defendants' Motion for Scheduling Order Related to Smallwood Issues, filed September 14, 2004. Having considered the Motions, Responses, Rebuttals, attachments to each and supporting and opposing authority, the Court finds the Motion to Reconsider is not well taken and should be denied. The Court further finds that the Motion for Scheduling Order Related to Smallwood Issues should be denied as moot.

## I. Background and Procedural History

Plaintiffs' claims are based on the alleged negligence of Defendant Ada Lauderdale ("Lauderdale") as an agent for Defendant State Farm Automobile Insurance Company ("State Farm"). Plaintiffs allege that this negligence occurred when Lauderdale did not advise and explain to Plaintiffs that they could increase their uninsured motorists insurance coverage to an amount equal to their liability insurance coverage. Plaintiffs allege that as a result of Lauderdale's negligence, Plaintiffs suffered unnecessary financial losses after

1. A decision on the Motion to Reconsider in this case was stayed pending the resolution on appeal of *Smallwood v. Illinois Cent. R.R. Co.,* 3:01CV561BN. The stay was affected because the hotly contested fraudulent joinder issues in *Smallwood* are related to the issues in this case. *Smallwood* originated in this Court. Finding that the non-diverse defendant was fraudulently joined, this Court denied plaintiff's Motion to Remand. That find-

ing was overturned on appeal by a three judge panel of the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit then granted a Petition for Rehearing *En Banc.* The *En Banc* Opinion of the Fifth Circuit in *Smallwood* has now been rendered, and the subject Motion to Reconsider is now ripe for consideration. The effect of *Smallwood* on the subject fraudulent joinder issue is set forth below.

having a wreck with an uninsured motorist.

In the Opinion and Order of the Court filed October 23, 2003, the Court granted Plaintiffs' Motion to Remand, finding there was a reasonable basis on which Lauderdale could be held liable. Defendants filed a Motion to Reconsider, arguing that this Court incorrectly reached this conclusion. Defendants specifically argued that Lauderdale could not be liable for failing to advise and explain the specifics of the uninsured motorists coverage at issue because Plaintiffs had contractually waived Lauderdale's duty to provide such advice and explanation. Defendants based this argument on a contract that State Farm and Plaintiffs entered into when Plaintiffs bought the initial vehicle that was covered under the policy. In that contract, Plaintiffs acknowledged that they were voluntarily seeking less uninsured motorist coverage than was available under the insurance policy. Although Plaintiffs signed the contract when buying the initial vehicle covered under the insurance policy, Defendants argued that the contract applied to all subsequently bought vehicles that would be covered under the same policy, such as the vehicle at issue. Hence, Lauderdale had no duty to advise Plaintiffs on the amount of uninsured motorists insurance coverage when Plaintiffs placed the subsequently bought vehicle of this case under their existing insurance policy, as Plaintiffs had been advised of this when they initially bought the policy. The contract at issue stated:

> this acknowledgment of coverage selection or rejection shall be applicable to the policy of insurance on the vehicle described below, *on all future renewals of the policy, and on all replacement policies,* until I make a written request for additional coverage or coverage more extensive than that provided on a prior policy.

Defendants' Rebuttal in Support of Motion for Reconsideration of Plaintiffs' Motion to Remand, p. 2, ¶ 3, filed November 20, 2003(quoting contract and adding emphasis to terms of contract).

On December 23, 2003, the Court issued an Opinion and Order which stated that "Defendants' argument seems to be with merit." Nevertheless, the Court stayed the matter as opposed to addressing Defendants' arguments because the United States Court of Appeals for the Fifth Circuit had recently rendered the first *Smallwood* opinion in *Smallwood v. Illinois Cent. R.R. Co.,* 342 F.3d 400 (5th Cir.2003), and the manner in which *Smallwood* was resolved would affect this case. Since that time, the Fifth Circuit met *en banc* to resolve the issues presented by the first *Smallwood* decision in *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 575 (5th Cir.2004) (*en banc* ). The adoption of the Fifth Circuit *en banc* of the "common defense" theory is directly applicable to this action. Before proceeding to the applicable standard for motions to reconsider, the Court first cites the applicable standard for fraudulent joinder analysis in light of *Smallwood.* This is because the motion to reconsider the Opinion and Order finding no fraudulent joinder must be considered in the context of the new standard for fraudulent joinder analysis.

## II. Fraudulent Joinder Analysis— Motion to Remand

■ The initial step in any fraudulent joinder analysis is determining whether "common defenses" apply to both the diverse and non-diverse defendant(s). A common defense is described as a defense, which if successfully argued by a movant who asserts fraudulent joinder, is equally dispositive of *both* the non-diverse defendants *and* the diverse defendants. *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d

568, 575 (5th Cir.2004) (*en banc*). If a common defense is involved in a movant's fraudulent joinder argument, then the Court must also consider if a successful outcome to the argument will result in the dismissal of *all* claims against *all* defendants. The importance of this step of the analysis is described by the Fifth Circuit in *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636 (5th Cir.2004).

> If that court should determine that the limitations defense in question is dispositive of *all* claims against *all* defendants, then *Smallwood* would require remand to state court (where, presumably, the entire case would be dismissed). If, however, the district court should determine that the [ ] defense is not dispositive of every claim against every defendant, it should continue to deny remand and proceed with the proper disposition of the case.

*Id.* at 638–39 (emphasis in original). Under the holdings in *Smallwood* and *Rainwater*, if a common defense disposes of all claims against all defendants, then the case must be remanded to state court.

### III. Motions to Reconsider

■ Motions to reconsider are analyzed under Rule 59(e) of the Federal Rules of Civil Procedure. The United States Court of Appeals for the Fifth Circuit has held that under a Rule 59(e) motion to reconsider, a district court should consider the following non-exclusive list of factors: (1) the reasons set forth by the movant justifying consideration of evidence or arguments that the movant failed to present in the underlying motion, (2) the importance of evidence or arguments, (3) whether the reasons set for by the movant justifying reconsideration were available to the movant before they responded to the underlying motion, and (4) the likelihood that the non-movants will suffer unfair prejudice if the motion is reconsidered. *Sturges v.*

*Moore,* 73 Fed.Appx. 777, 778 (5th Cir. 2003) (citing *Ford v. Elsbury,* 32 F.3d 931, 937–38 (5th Cir.1994)). Litigants considering a Rule 59(e) motion have been "strongly cautioned" to carefully consider the grounds for such a motion. *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 n. 1. (S.D.Miss.1990). "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Id.*

### IV. Analysis

Plaintiffs' Complaint solely alleges negligence against Lauderdale. Any liability of State Farm will have to be founded on the doctrine of vicarious liability. Thus, if Lauderdale successfully defends herself on Plaintiffs' negligence claim, then the claim against State Farm for vicarious liability must fail as well. Under the guidance of *Smallwood,* the analysis should end there and this matter should be remanded to state court. Nevertheless, for the reasons that follow and are rejected by the Court, Defendants' argue that this Court should exercise jurisdiction in spite of *Smallwood.*

In Defendants' original Motion to Reconsider they argued that this Court incorrectly determined that Lauderdale could be held liable under Mississippi law. That argument has become moot in light of *Smallwood,* because even if Defendants are correct in their argument, such a determination in Defendants' favor would mean that Lauderdale's successful defense against Plaintiffs' claims for negligence would equally dispose of the vicarious liability claim against State Farm. Hence, a "common defense" would dispose of *all* claims against *all* Defendants. Defendants' implicitly recognized this with their Supplemental Response to the Motion to Remand, filed January 11, 2005, in which

Defendants did not re-visit the arguments made in the Motion to Reconsider.

While Defendants do not frame their current argument in terms of the standard for a motion to reconsider, Defendants do offer the unique argument that this Court should retain jurisdiction because Plaintiffs will not stipulate that they will not amend their Complaint to seek additional causes of action against State Farm after this Court decides the Motion to Reconsider. Defendants concern that Plaintiffs will attempt to do this stems from two facts. The first is that under the liberal pleading standards of Mississippi, Plaintiffs may amend their Complaint even as late as the close of evidence, before the case is presented to the jury. See Miss. R. Civ. P. 15(b); see also Jeffrey Jackson, Miss. Practice Series, Miss. Civ. P., Vol. I, §§ 5:14 & 5:15(discussing the liberal pleading practices in Mississippi and their treatment by the courts of Mississippi). The second is that Plaintiffs refuse to stipulate that they will not do this, and Defendants argue that this refusal is an implicit indication that Plaintiffs seek to amend their Complaint at some point after this Court decides the Motion to Reconsider. See Objection and Response of Plaintiffs to Request for Admissions, p. 1, ¶ 1, attached as Exhibit "B," to Defendants' Supplemental Response to Motion to Remand, filed January 11, 2005(requesting "[a]dmit that plaintiffs hold no cause of action against State Farm related to this suit separately from the vicarious liability sought to be asserted against State Farm through Ada

Lauderdale" and Plaintiffs responding "Denied").[2]

Were Plaintiffs to do this, and assuming that they have knowledge that they will amend their Complaint to assert additional causes of action against State Farm after this Court decides the Motion to Reconsider, then Plaintiffs would be perpetuating a fraud on this Court. This is because had Plaintiffs added new causes of action against State Farm at this time, then it is likely that this Court would retain jurisdiction under Smallwood, as it would likely no longer be the case that the defenses of Lauderdale would equally dispose of all claims against State Farm. Were Plaintiffs to add new causes of action after remand, they would knowingly be using Smallwood and the liberal pleading standards of Mississippi to make an end-run around the proper jurisdiction of this Court.

Defendants argue that it would be proper for the Court to find that Plaintiffs' denial that they will not seek additional causes of action is a proper ground on which to deny remand. Defendants argue that there is support for this argument in past decisions made by this Court, such as McLain v. American Int'l Recovery, Inc., 1 F.Supp.2d 628 (S.D.Miss.1998) and Draper v. U.S. Fidelity & Guaranty Co., No. Civ.A. 3:00CV70BN, 2000 WL 268565 (S.D.Miss. Mar. 8, 2000). Both McLain and Draper dealt with the issue of whether the amount in controversy requirement was present for the Court to retain jurisdiction.

**2.** Defendants also argue that certain discovery requests submitted by Plaintiffs indicate an intent to include such types of independent contentions [i.e., a claim for failure to properly educate, train, and/or supervise its agents] against State Farm as part of this action. See Notice of Deposition and Request for Production filed May 17, 2003, and attached hereto as Exhibit 'A.'

Defendants' Motion for Scheduling Order Related to Smallwood Issues, p. 2, ¶ 3, filed September 14, 2004. The notice of deposition and request for production cited is not included in the official record of the Court behind the Motion for Scheduling Order Related to Smallwood Issues, as cited.

In *McLain* the Court noted a particular jurisdictional game played by some plaintiffs when pleading damages. The Court described the game as follows:

> In that scheme, the plaintiff's attorney files a complaint in state court alleging damages below the federal jurisdictional amount. The plaintiff's attorney plans to amend the state court complaint and allege damages well above the federal diversity jurisdictional amount when a year from filing the original complaint has run. At that time, though the damages may exceed $75,000 and there is complete diversity between the parties, the case cannot be removed to federal court because 28 U.S.C. § 1446(b) states that a case cannot be removed on diversity grounds, 'more than 1 year after commencement of the action.'

*McLain*, 1 F.Supp.2d at 630.

The plaintiff in *McLain* appeared as if she could have been playing this jurisdictional game. The plaintiff had explicitly sought $49,500.00 [3] in damages for insurance fraud in her state court Complaint. Defendant became nervous that plaintiff intended to seek more in damages than this amount, and so defendant asked plaintiff to stipulate that she would not at any point in time seek more than $75,000.00. *Id.* at 629–630. The plaintiff refused to sign a stipulation and so defendant removed, arguing that the refusal to sign a stipulation served as an "other paper" on which the action became removable. *Id.* at 630. This Court disagreed, stating that the refusal to sign a stipulation could not serve as affirmative evidence of an intent to seek more than $75,000.00 in damages. *Id.* at 631.

But to enable defendants to defend themselves against a flagrant abuse of the tension between liberal state pleading standards and the time limit for removal, the Court explicitly discussed and affirmed the "Preferred Approach." *Id.* at 631–32. Under the "Preferred Approach,"

> [w]hen a plaintiff has pleaded damages below $75,000 and defense counsel believes that the damages are in excess of $75,000, the defendant can have the case properly removed by utilizing state court discovery procedures. Specifically, the defense lawyer can have the plaintiff admit through a deposition, an interrogatory, or a request for admission that his damages do not exceed $75,000. If the plaintiff denies this request,[4] the case can be removed and this discovery response should be filed in the record. This discovery response will constitute 'other paper' that affirmatively shows that the jurisdictional amount may be satisfied.

*Id.* at 631.

In *Draper* the Court explicitly expanded the reach of *McLain*, stating that

> [e]ven though the Court stated in *McLain* that 'if the plaintiff *denies* the request for admission' the case would be removable, the procedure that the Court prescribed was premised on the fact that *certain actions or omissions* by a plaintiff are sufficient indications that the

---

**3.** At the time of *McLain* the jurisdictional threshold for the amount in controversy was $75,000.00. Presumably the defendant in that action believed the amount in controversy determination to be controlled by the former jurisdictional threshold amount of $50,000.00. The amount in controversy requirement was raised from $50,000.00 to $75,000.00 by amendment to 28 U.S.C. § 1332 in 1996, which was a time period not long before the *McLain* action.

**4.** That is, if a plaintiff affirmatively denied that he or she will not seek more than $75,000.00, and not if a plaintiff simply refused to answer the question in the first place, as occurred in *McLain*.

plaintiff intends to amend her complaint to increase the damages. The Court finds *in this case* that Plaintiff's refusal to answer the request for admission that she would not seek more than $75,000.00 is indicative of an intent to amend her complaint to exceed the diversity jurisdiction limit. In *McLain* the Court prescribed a straight-forward method by which a defendant could determine whether the plaintiff in good faith intended to remain in state court by avoiding the jurisdictional limits of the federal courts. In this case, Plaintiff could have remained in state court with a straightforward response to the request for admission. In so holding, the Court expressly expands the procedure for removal prescribed in *McLain* to allow

removal if a plaintiff *in any way fails to admit* she will not seek more than the jurisdictional amount.

*Draper,* 2000 WL 268565, at *3(portion of emphasis in original and portion of emphasis added).[5] Thus, *Draper* turned the requirement of *McLain,* that a party had to *affirmatively deny* he or she would not seek more than $75,000.00, on its head. Under *Draper,* removal was proper if a party *in any way failed to admit* that he or she would not seek more than $75,000.00, and assuming there was some "other paper" on which a defendant could rely to remove.

Defendants' argument hinges on applying the principles of *McLain* and *Draper* to this case. Defendants argue that they may force plaintiffs, though the "Preferred

---

**5.** "Certain actions or omissions" and "[i]n this case" are emphasized because of the particular circumstances before the Court in *Draper.* In *Draper,* the plaintiff refused to answer defendant's request for admission that plaintiff did not seek more than $75,000. *Id.* at *1. This was a "certain omission." The plaintiff did, however, indirectly answer that request in a separate motion of plaintiff's to extend the time in which to conduct discovery. *Id.* at *1. This was a "certain action." Plaintiff argued that more discovery was needed before she could answer the request for admission. In this separate Motion, the plaintiff stated that if she were required to immediately answer the request for admission, without the benefit of further discovery, her response would be:

Admitted at this time but the Plaintiff reserves the right to change her response if at such time further discovery discloses additional conduct and/or additional parties or entities.

*Id.* at *1. Thus, even though Plaintiff omitted to affirmatively answer the request for admission, she did indirectly affirmatively act toward the admission in her separate motion for further discovery. That was enough for the Court to find that the plaintiff had provided the defense with an "other paper" to remove, and that defendant had proven by a preponderance of the evidence that the plain-

tiff actually sought more than $75,000.00, even though the plaintiff refused to directly answer the request for admission. This finding built upon the reasoning of *Freeman v. Witco Corp.,* 984 F.Supp. 443, 450 (E.D.La. 1997), which was cited with what might be termed passing approval in *McLain,* 1 F.Supp.2d at 631–32, and in which the plaintiff provided defendant with direct answers to a request for admission. In *Freeman,* the following exchange took place:

Request No. 1:

Admit that you will not seek damages nor will you execute on any judgment or judgments rendered in your favor against any of the defendants in excess of $75,000, exclusive of interests and costs.

[Answer]:

Denied. This request is premature. [The plaintiff] is continuing to work light duty. We cannot within a reasonable legal and/or medical probability stipulate to this request at this time.

*Id.* at 450. On the basis of this answer, the court in *Freeman* retained jurisdiction. The answer in *Freeman* was akin to the admission of the plaintiff in *Draper,* and although the admission in *Draper* was contained in a separate motion from the response to the request for admission, it was nevertheless sufficient to sustain the defendant's burden of demonstrating that plaintiff sought more than $75,000.00.

Approach," to admit that they are not seeking to play a jurisdictional game and strip the federal courts of proper jurisdiction. In days gone by that argument might be well taken. However, recently in *Wilbanks v. N. Am. Coal Corp.*, 334 F.Supp.2d 921, 926 (S.D.Miss.2004), this Court recognized that after the *McLain* and *Draper* decisions, the United States Court of Appeals for the Fifth Circuit had decided *Tedford v. Warner–Lambert Co.*, 327 F.3d 423 (5th Cir.2003), and that *Tedford* "tempered" the findings in *McLain* and *Draper*. *Tedford* applied to *McLain* and *Draper* because the Fifth Circuit, for the very first time, held that "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in [28] U.S.C. § 1446(b) be extended." *Tedford*, 327 F.3d at 428–29. *Tedford* "tempered" *McLain* and *Draper* because now a defendant, equipped with an equitable exception for forum manipulation, no longer needed to use a stringent form of the "Preferred Approach" to protect his or her rights. Thus, the language of *Draper*, which stated that removal would be allowed if a plaintiff "in any way fails to admit" that he or she will not seek more than the jurisdictional amount, is now considered to carry less force. *Wilbanks*, 334 F.Supp.2d at 925–26.

Because of the equitable exception in *Tedford*, the Court in *Wilbanks* reached a different conclusion than it did in *Draper* and as it suggested it would in *McLain*. That is, in *Wilbanks* the Court found that even though a plaintiff affirmatively an-swered several interrogatory requests of defendants in which plaintiff refused to provide a blanket denial that he would ever seek more than the amount in controversy, defendants had failed to prove by a preponderance of the evidence that plaintiff's answers indicated that plaintiff would in fact seek more than $75,000.[6] *See Id.* at 926–28. The Court made this finding because *Tedford* succinctly provided a means by which defendants could prevent plaintiffs from manipulating the tension between liberal state pleading standards, the one year time limit for removal, and the amount in controversy requirement.

*Tedford* should no less apply to forum manipulation concerning the amount in controversy than it should to forum manipulation concerning adding new causes of action. Either way the plaintiffs would be manipulating jurisdiction by preying upon the tension between the liberal pleading standards of Mississippi and the time limit for removal. While the Court again affirms its approval of the use of the "Preferred Approach" in the context of the amount in controversy, and while the Court hereby explicitly adopts the use of the approach in cases concerning the tension between *Smallwood* and the liberal pleading requirements of Mississippi,[7] *Tedford* takes the need away for applying the "Preferred Approach" as a means of attempting to exercise proper jurisdiction in this case. The Court is mindful of what it stated in *Wilbanks*:

> The Court is aware that under the procedural rules of Mississippi, the *ad damnum* clause of the Complaint may be

---

**6.** Plaintiff's answers in *Wilbanks*, 334 F.Supp.2d at 924, were very similar to those in *Freeman* and the answer contained in the separate motion for additional discovery in *Draper*.

**7.** That is to say that there is nothing that should prevent a defendant from attempting to discover through discovery procedures whether or not a plaintiff attempts to assert additional, yet unnamed causes of action against an out-of-state defendant.

amended even as late as at the close of evidence, before the case is presented to the jury. The Court presumes that the state trial judge would prohibit such an amendment as it would be allowing the Plaintiff to perpetrate a fraud on this Court. Should Plaintiff, after the statutory limit for removal has passed, conveniently and coincidentally amend his pleading to seek [additional causes of action against State Farm], this Court would entertain imposing the *Tedford* exception. The Court would not take such behavior lightly. Litigation is more than a chess game.

*Id.* at 927.

■ For the reasons above and in light of *Tedford,* the Court will not use the "Preferred Approach" in an attempt to exercise proper jurisdiction. *Tedford* should provide adequate protection against forum manipulation in the event the one year time limit for removal has expired. Therefore, the Motion to Reconsider is not well taken and is denied. Defendants' Motion for Scheduling Order Related to Smallwood Issues is denied as moot.

### V. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Reconsider [15–1] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that Defendants' Motion for Scheduling Order Related to Smallwood Issues [19–1] is hereby denied as moot.

IT IS FURTHER ORDERED that the Clerk of the Court remand this matter to the Circuit Court of Warren County, Mississippi.